## BASKIN et al. v. HAYS.

*(Supreme Court, General Term, Fifth Department.* January 23, 1891.)

WILLS—RIGHTS OF LEGATEES—FAILURE TO MAKE DISTRIBUTION.

  Where legatees take possession of the property bequeathed to them, and use and control it as their joint property, and pay off the debts of their testatrix, and about four years afterwards some of the legatees obtain letters testamentary, the property bequeathed and its increase will be regarded as the property of the legatees, and subject to an execution against them, and cannot be recovered by those who procured the letters testamentary as the property of the estate of testatrix; judicial distribution not being necessary to vest title to the property in them.

Appeal from judgment entered on report of referee.

Action by Herman C. Baskin and Estella A. Baskin, as executors, against Washington D. Hays. From a judgment for defendant, plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*John Gillette,* for appellants. *M. A. Leary,* for respondent.

DWIGHT, P. J. The findings of fact of the referee are well supported by the evidence, and they in turn support the conclusions of law and the judgment from which this appeal is taken. The action was replevin for a horse taken by the defendant on execution against Herman, Estella, Winifred, and Mabel Baskin. These four were children of Eliza Baskin, who died in 1879, leaving a will by which, after providing for the payment of debts and an expenditure of $700 for monuments and improvements in the family burial grounds, she gave to them her farm, to be divided equally between them, acre for acre, and all her personal property, consisting mainly of farm stock and implements, to be divided equally between them, share and share alike. No steps were taken towards administration of the estate until nearly four years after the death of the testatrix, when letters testamentary were issued to the plaintiffs, who were two of the devisees and legatees; but, immediately upon the death of their mother, the four devisees and legatees entered into possession of the farm and personal property, and held, used, and controlled the same as their joint property, and for their joint use and benefit. They have paid off all the debts of the estate, amounting to $1,800, or $2,000, except about $300, partly from the sale of personal property of the estate, partly from proceeds of the farm, and partly from the earnings of two of their number. A mortgage on the farm has been paid in part by the sale of a portion of the land, and the interest on the amount unpaid has been met from the proceeds of the farm. The horse in question was foaled nearly four years after the death of the testatrix, his dam being a mare which belonged to the estate, and which was held and used by the legatees in common as above stated. He was kept as a stallion, and his earnings were received and employed, as other proceeds of the farm, in the payment of debts. What suggestion of necessity or convenience led to the taking out of letters testamentary in 1883 does not

appear, but the next step towards administration of the estate seems to have been taken in 1886, when an inventory was filed of certain personal property then in possession of the legatees, and in which the horse in question was included; and, so far as appears, the next official act of the executors was the bringing of this action. There is no evidence that, at any time after the issuance of letters testamentary, there was any change in the custody, control, or use of the personal property. The execution under which the defendant levied on the horse was issued on a judgment recovered by one Campbell as defendant in an action brought by the four devisees and legatees against him in a justice's court. Neither their alleged cause of action nor the counterclaim upon which the defendant Campbell obtained his judgment is disclosed by this record; but the judgment was docketed in the office of the county clerk, and the execution was issued thereon under which the horse was taken by the defendant in this action, acting as a deputy-sheriff. Thereupon the plaintiffs, two of the execution debtors, brought this action, as executors of their mother's estate, claiming that the horse belonged to them as such. Upon findings of fact, substantially summarized above, and which are fully supported by the evidence, the referee held that the execution debtors were the owners of the horse, and that it was properly taken by the defendant on execution against them; and in this conclusion we think the referee was clearly right.

There was no need of a partition or judicial distribution of the personal property any more than of the real estate in order that the title of the legatees should vest therein. It was competent for them to hold the property in common so long as they agreed to do so, subject only to the payment of debts of the estate and the satisfaction of the provisions of the will relating to monuments and the fencing of the burial grounds. No creditor or other person interested has been heard to object that these provisions of the will are not satisfied, and the evidence tends to show that there is ample property for the purpose without resorting to the particular horse upon which the defendant levied the execution in his hands. The finding of the referee that by virtue of such execution and levy the defendant acquired a right to the possession of the horse in question, and a special property therein to the amount of the judgment, with interest and sheriff's fees, seems to be well justified, and to afford ground for the judgment appealed from. The judgment should be affirmed. All concur.